# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5003 | DATE | 1/30/2004 |
| CASE TITLE | Gordon Johnson vs. Exxon Mobil Corporation | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order pursuant to Judgment entered on 1/26/04. Johnson is judicially estopped from establishing an element of his prima facie ADEA claim. Accordingly, summary judgment is entered in favor of Exxon as to Johnson's ADEA claim.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | FEB 0 2 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | 161 |
| | Copy to judge/magistrate judge. | | | |
| TH | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GORDON R. JOHNSON,        )
                          )
            Plaintiff,    )
                          )   No. 02 C 5003
       v.                 )
                          )
EXXON MOBIL CORPORATION,  )
                          )
            Defendant.    )

DOCKETED
FEB 0 2 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Plaintiff Gordon Johnson sued Defendant Exxon Mobil Corporation ("Exxon"), alleging that Exxon violated several anti-discrimination laws when it discharged him. Johnson's sole remaining claim arises under the Age Discrimination in Employment Act ("ADEA").[1] For the reasons stated herein, the Court *sua sponte* grants summary judgment in favor of Exxon as to Johnson's ADEA claim.

## LEGAL STANDARDS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of*

---

[1] The Court granted summary judgment in favor of Exxon as to Johnson's Title VII claim (R. 82-1, Minute Order) and his ADA claim (R. 133-1, Minute Order), and precluded Johnson from raising a hostile work environment claim under either the ADA or ADEA. (R. 153-1, Minute Order.)

*Attica,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Employment Opportunity Comm'n v. Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002).

A district court may *sua sponte* grant summary judgment where there are no genuine issues of material fact and where the losing party has been given notice and an opportunity to come forward with its evidence. *Osler Inst., Inc. v. Forde,* 333 F.3d 832, 836 (7th Cir. 2003); *see also Celotex,* 477 U.S. at 326, 106 S. Ct. at 2554. Summary judgment should not take a party by surprise. *See Choudhry v. Jenkins,* 559 F.2d 1085, 1089 (7th Cir. 1977); *Goldstein v. Fid. & Guar. Ins. Underwriters, Inc.,* 86 F.3d 749, 750 (7th Cir. 1996) ("The party against whom summary judgment is entered must have notice that the court is considering dropping the ax on [it] before it actually falls.").

## BACKGROUND

### I. Undisputed Facts

Briefly the facts are these.[2] Johnson, a fifty-four year old male, worked at Exxon's Joliet Refinery for twenty-eight years. (R. 60-1, Def.'s Statement of Material Facts ¶ 1.) Johnson

---

[2] The Court's previous orders set forth the undisputed facts in detail.

2

suffers from epilepsy, which affects his judgment, memory and ability to concentrate. (R. 64-1, Pl.'s Statement of Add'l Facts ¶¶ 15-16.) Exxon terminated Johnson on March 14, 2002 after discovering that Johnson used his corporate American Express credit card for his personal use. (*Id.* ¶¶ 13, 20.) Johnson filed suit against Exxon on July 15, 2002, alleging that Exxon discriminated against him in violation of Title VII, the ADA, and the ADEA.

## II. Johnson's Representations To The Social Security Administration

On March 5, 2003, approximately one year after Exxon terminated him, Johnson filed an application for Social Security Disability Insurance benefits ("SSDI Application"). In his SSDI Application, Johnson stated under oath that he became unable to work because of his epilepsy on March 14, 2002, the same date Exxon terminated him. Johnson signed his SSDI Application and "affirm[ed] that all information I have given in this document is true."[3] (SSDI Application at 4.)

The Social Security Administration ("SSA") initially rejected Johnson's application for SSDI benefits. Johnson filed a Request for Reconsideration, and on October 22, 2003, the SSA reversed its initial determination and awarded Johnson benefits retroactively to March 14, 2002, the day that Exxon terminated him.

## III. The Parties' Submissions

Exxon filed a motion for summary judgment on June 8, 2003. In its reply brief, Exxon argued that Johnson was judicially estopped from asserting his ADA claim under *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 119 S. Ct. 1597 (1999). Specifically, Exxon

---

[3] The SSDI Application provides that "I know that anyone who makes or causes to be made a false statement or representation of material fact in an application or for use in determining a right to payment under the Social Security Act commits a crime punishable under federal law by fine, imprisonment or both. I affirm that all information I have given in this document is true." (SSDI Application at 4.)

3

argued that Johnson's statements in his SSDI Application were fundamentally inconsistent with his ADA claim.[4] (R. 73-1, Def.'s Reply in Supp. of its Mot. for Summ. J. at 13-14.) The Court directed Johnson to file a sur-reply addressing the issue of whether Johnson's ADA claim was barred by his SSDI Application. (R. 76-1, Minute Order.) Johnson responded first that *Cleveland* did not apply because Johnson did not actually receive SSDI benefits. (R. 77-1, Pl.'s Sur-Reply to Def.'s Mot. for Summ. J. at 3.) He further contended that his health condition worsened after his termination and that he did not apply for SSDI benefits until approximately one year after his termination. (*Id.*) In conjunction with his sur-reply, Johnson filed an affidavit in which he stated that "As a result of my poor health condition, I became physically incapacitated and could not seek substitute employment. Consequently, on March 5, 2003, approximately one year after my discharge, I filed an application for disability insurance benefits. In the application, I stated that I was unable to work since my last date of employment with Exxon/Mobil." (R. 77-1, Ex. A, Pl.'s Aff. ¶ 4.) The Court denied summary judgment as to Johnson's ADA claim because Johnson had not actually received SSDI benefits.[5] (R. 82-1, Minute Order.) Accordingly, the Court did not need to address whether it accepted Johnson's proffered explanation. (*See* R. 133-1, Minute Order ¶ 6.)

Exxon filed a motion for reconsideration after learning that the SSA reversed its initial determination and awarded Johnson SSDI benefits retroactively to March 14, 2002, the date of

---

[4] To establish a *prima facie* case of disability discrimination under the ADA, Johnson must establish that as of the date of his termination he was qualified to perform, "with or without reasonable accommodation," "the essential functions of the employment position that [he] holds or desires." 42 U.S.C. § 12111.

[5] Additionally, the Court granted summary judgment as to Johnson's Title VII claim and denied summary judgment as to his ADEA claim. (R. 82-1, Minute Order.)

4

his termination. Exxon argued that Johnson was estopped from bringing his ADA claim[6] because he actually received and accepted SSDI benefits that were awarded to him on the basis of his representations to the SSA. (R. 92-1, Def.'s Mot. for Partial Reconsideration of their Mot. for Summ. J.) In his response, Johnson reiterated his earlier explanation, stating that his "health condition worsened after his termination. Based on his then existing health condition, Johnson filed an SSDI claim on March 5, 2003. Johnson's statements are accurate when considered in the time period in which they were made." (R. 130-1, Pl.'s Resp. to Def.'s Mot. for Partial Reconsideration at 8.) The Court noted that Johnson represented to the SSA that he was unable to work as of the date of his termination, and that the SSA awarded him SSDI benefits—which he accepted—on the basis of that representation. (R. 133-1, Minute Order ¶ 6.) The Court further noted that Johnson's explanation was legally insufficient to reconcile his two conflicting positions, and granted summary judgment as to Johnson's ADA claim.

On January 8, 2004, the morning of the final pretrial conference, Exxon submitted another motion for summary judgment that focused on the damages Johnson sought under the ADEA. (R. 142-1, Def.'s Mot. for Summ. J. Based on the Court's Recent Rulings ("Def.'s Second Mot. for Summ. J.").) Exxon argued that trial would be "futile" because Johnson "should be estopped from claiming any lost wages or back pay under the ADEA, based on the same statements [in the SSDI Application]," and that "[t]here is nothing left to dispute in this case as there are no damages." (R. 142-1, Def.'s Second Mot. for Summ. J. at 10-11.) Again, for reasons unknown to the Court, Exxon did not argue that Johnson was judicially estopped from

---

[6] For reasons unknown to the Court, Exxon failed to move for summary judgment under the same theory as to Johnson's ADEA claim, and instead limited its motion for reconsideration to Johnson's ADA claim.

5

establishing his ADEA claim. Rather, Exxon focused on the damages element of Johnson's case and argued that Johnson was judicially estopped from receiving damages based on back pay.[7] The Court denied the motion as untimely. (R. 144-1, Minute Order.)

At the jury instruction conference on January 23, 2004, Exxon repeated its argument that Johnson was judicially estopped from seeking damages based on back pay and that, as a result, there were no possible damages and therefore nothing left to dispute. The Court noted at the jury instruction conference that even if Exxon had filed the motion in a timely manner, Exxon had failed to demonstrate that no genuine issue of material fact existed as to whether Johnson was entitled to liquidated damages. Exxon further failed to explain why the Court could not award attorney's fees to Johnson's attorney if Johnson won on the issue of liability.

After the conference, Exxon submitted supplemental authority. Based on the caselaw Exxon cited in its letter, Exxon appeared to shift its focus from the question of Johnson's available damages to the question of whether Johnson was estopped from establishing a *prima facia* ADEA claim.

On January 26, 2004, the morning trial was scheduled to commence, the Court addressed the issue of whether Johnson's representation to the SSA that he was unable to work on March 14, 2002 was fundamentally inconsistent with his *prima facie* ADEA claim.[8] The Court then

---

[7] Specifically, Exxon argued that a plaintiff is entitled to back pay only for the period during which he was actually able to work, and Johnson himself admitted in his SSDI Application that he was unable to work as of the day he was terminated.

[8] It is undisputed that Johnson has no direct evidence of age discrimination. To prevail on his age discrimination claim, therefore, Johnson must show that (1) he is a member of a protected class; (2) he was performing at a level that met Exxon's legitimate expectations; (3) Exxon subjected him to an adverse employment action; and (4) Exxon treated him differently than a similarly situated person that is substantially younger than him. *Krchnavy v. Limagrain*

6

asked Johnson's attorney to identify what evidence he intended to introduce at trial to resolve Johnson's facially inconsistent positions. Johnson's attorney stated that he would show that Johnson was in fact able to work on the date he was terminated, that his condition substantially worsened immediately after he was terminated, that he did not personally fill out the SSDI Application (although he signed it), and that he did not file for SSDI benefits until approximately one year after his termination. Johnson's attorney then confirmed that this was the same evidence he had offered in response to the summary judgment motion, and that he had nothing new to offer at trial.

The Court orally entered judgment in favor of Exxon as to Johnson's ADEA claim. Johnson did not object or argue that the issue was not properly before the Court, and he did not seek leave to introduce any new evidence.

## ANALYSIS

### I. Johnson Cannot Establish That He Was Performing At A Level That Met Exxon's Legitimate Expectations On The Day Exxon Terminated Him

#### A. Judicial Estoppel Applies

The doctrine of judicial estoppel is intended to protect the integrity of the judicial process by preventing a party who prevails on one ground in one judicial proceeding[9] from repudiating that ground in a subsequent judicial proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808 (2001). Judicial estoppel may apply when (1) the later position is clearly

---

*Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002).

[9] Judicial estoppel applies with equal force when a party seeks to repudiate statements made, as here, in a previous administrative proceeding rather than a judicial proceeding. *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993).

inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first tribunal to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *United States v. Christian*, 342 F.3d 744, 747 (7th Cir. 2003). All of these elements are present in this case.

Johnson took facially inconsistent positions before the SSA and before the Court. First, he represented to the SSA in his SSDI Application that he was "unable to work because of [his] disabling condition" as of March 14, 2002. Johnson clearly intended the SSA to accept the truth of the facts he alleged in support of his claim for disability, and indeed he "affirm[ed] that all information I have given in this document is true." Johnson ultimately convinced the SSA to adopt his position, and the SSA awarded him SSDI benefits retroactively to March 14, 2002.

After prevailing before the SSA, Johnson asserted a fundamentally inconsistent position before the Court. He represented to the Court in his complaint and subsequent pleadings that he was in fact able to perform his employment duties according to Exxon's legitimate expectations on March 14, 2002.

Johnson's two positions are clearly inconsistent: in order to be "disabled" for SSDI purposes, an applicant must be incapable of performing his "past relevant work," and he must be found unable to perform any other job existing in significant numbers in the nation's economy. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(e)-(f), 404.1560(b)-(c) (2002). In order to establish a *prima facie* case under the ADEA, a plaintiff must show, among other things, that he was "qualified" for the position he held prior to his termination. *Biolchini v. General Elec. Co.*, 167 F.3d 1151, 1153-1154 (7th Cir. 1999). To be "qualified" a plaintiff must have been

8

"performing according to his employer's legitimate expectations" at the time of his discharge. *Id.* Johnson must "explain why that SSDI contention is consistent with" his subsequent assertion in connection with his ADEA claim in order to proceed with his ADEA claim. *Cleveland*, 526 U.S. at 798, 119 S. Ct. at 1597.

### B. Johnson Cannot Reconcile The Inconsistency

Johnson cannot "simply ignore the apparent contradiction." *Cleveland*, 526 U.S. at 806, 1597. His "explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless [perform the functions of his job according to the reasonable expectations of his employer]." *Id.*

Johnson has had no less than three opportunities to explain how his representations to the SSA can be reconciled with his ADEA claim: (1) in his sur-reply to Exxon's motion to dismiss; (2) in his response to Exxon's motion for reconsideration; and (3) in open court on the morning trial was to begin. In all three attempts to explain himself, Johnson asserted the same basic arguments: he was in fact able to work on the date he was terminated, his condition substantially worsened immediately after he was terminated, he did not personally fill out the SSDI Application (although he signed it), and he did not file for SSDI benefits until approximately one year after his termination. Even accepting Johnson's version of the facts, none of these explanations is legally sufficient to avoid the application of judicial estoppel.

It is difficult for an ADEA plaintiff to reconcile statements made to the SSA for the purpose of obtaining disability benefits with his ADEA claim. A plaintiff hoping to reconcile contradictory statements must base his explanation on the difference between what it means to be

"disabled" for SSDI purposes and what it means to perform according to the employer's legitimate expectations under the ADEA. The Supreme Court recognized that a plaintiff could possibly be "disabled" for SSDI purposes and at one and the same time be a "qualified individual" under the ADA because a disabled individual might be able to perform the essential functions of his job with a "reasonable accommodation." *Cleveland*, 526 U.S. at 805, 119 S. Ct. at 1603. The ADEA, however, does not provide for any consideration of potential "reasonable accommodation," and instead simply requires that the individual must be qualified to "perform the job according to his employer's legitimate expectations." *See Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 118 (3rd Cir. 2003). Johnson has made no attempt to explain how he can be simultaneously "disabled" for SSDI purposes while still being capable of "performing according to his employer's expectations" as required by the ADEA.

Johnson's first argument is that he was in fact able to work on the date he was terminated. This is not an explanation, it is a disavowal. As a matter of law Johnson cannot resolve the inconsistency by simply disavowing his earlier statements. *Cleveland*, 526 U.S. at 805, 119 S. Ct. at 1603.

Johnson's next argument is that his condition "substantially worsened immediately after he was terminated," and that as a result, he did not file for SSDI benefits until approximately one year after his termination. This flatly contradicts his representation to the SSA that he became unable to work on the day he was terminated. Even if his condition did in fact worsen after his termination, Johnson does not explain why he sought benefits and represented to the SSA that he became unable to work because of his disabling condition on the precise day of his termination. The fact remains that the SSA awarded Johnson SSDI benefits retroactively to March 14, 2002,

and Johnson accepted those benefits.

Finally, Johnson argues that he did not personally fill out his SSDI Application. Johnson does not dispute, however, that he signed the completed application knowing that providing false information was "a crime punishable under federal law by fine, imprisonment or both." Moreover, Johnson does not contend that he was unable to read the application or unable to understand it. By signing the Application and "affirm[ing] that all information [he has] given in this document is true," Johnson had a duty to verify that his representations in the Application were accurate.

Johnson's representations to the SSA in securing disability benefits, along with his continued acceptance of those benefits, estop him from asserting that he was able to perform the duties of his job at Exxon, an element of his *prima facie* ADEA claim. *See Detz*, 346 F.3d at 118 (affirming summary judgment on ADEA claims where plaintiff could not explain the inconsistency between SSA representations and ADEA claim); *Brown v. Nat'l R.R. Passenger Corp.*, No. 86 C 10284, 1990 WL 119558, at *7 (N.D. Ill. Aug. 14, 1990) (dismissing ADEA claims where plaintiff represented he was disabled and received disability benefits).

## II. Summary Judgment Is Warranted Despite Exxon's Failure To Explicitly Seek Summary Judgment On This Precise Issue

Summary judgment is proper even in the absence of a motion for summary judgment where there are no genuine issues of material fact and where the losing party has been given notice and an opportunity to come forward with its evidence. *Osler Inst.*, 333 F.3d at 836.

Johnson had the opportunity to address the inconsistency issue. The Court repeatedly

11

expressed its concerns about the inconsistency between Johnson's SSDI Application and his discrimination claims. Moreover, the Court granted summary judgment on that very basis as to Johnson's ADA claim. Because it is even more difficult for a plaintiff to adequately explain an inconsistency and thereby avoid estopppel with respect to an ADEA claim, it should have come as no surprise to Johnson that his ADEA claim would also fail for the same reason. Johnson had sufficient notice that the Court was considering granting summary judgment as to the ADEA claim.[10]

Moreover, Johnson had been given a full and fair opportunity to present evidence intended to explain the inconsistency between his positions. As discussed in Section I.B, Johnson had at least three chances to sufficiently explain his contradictory positions, and he had every incentive to do so.[11] By the time the Court entered judgment, Johnson had already fully developed the facts in support of his case, and discovery had long since closed. The Court considered all of the evidence that Johnson planned to present at trial. The Court reached its decision only after it had become clear that Johnson could not provide a sufficient explanation under *Cleveland. Portsmouth Square, Inc. v. Shareholders Protective Comm.*, 770 F.2d 866, 870 (9th Cir. 1985) (affirming *sua sponte* summary judgment where the losing party had no warning that the court intended to raise the issue at the pretrial conference, but where discovery had

---

[10] Indeed, Johnson's attorney did not express any surprise when the Court entered judgment for Exxon, nor did he complain that he had no notice that his ADEA claim was in peril.

[11] The fact that Johnson's first and second attempts to explain the contradiction were undertaken with respect to his ADA claim—rather than his ADEA claim—is irrelevant given the more restrictive definition of what it means to be "qualified" under the ADEA. In other words, if Johnson's explanation was insufficient to salvage his ADA claim, then the identical explanation based on identical evidence is necessarily insufficient to salvage his ADEA claim.

12

closed and the court considered all of the evidence that plaintiff would have presented at trial.)

## CONCLUSION

Johnson is judicially estopped from establishing an element of his *prima facie* ADEA claim. Accordingly, summary judgment is entered in favor of Exxon as to Johnson's ADEA claim.

DATED: January 30, 2004　　　　　　　　ENTERED

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　AMY J. ST. EVE
　　　　　　　　　　　　　　　　　　　　United States District Court Judge